NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| LORI TIETJEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 17-8030-BRM |
| | : | |
| NANCY BERRYHILL, | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | OPINION |
| | : | |
| Defendant. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Lori Tietjen's ("Tietjen" or "Plaintiff") appeal from the final decision of Nancy Berryhill, the Acting Commissioner of Social Security (the "Commissioner"),[1] denying her application for disability insurance benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Civil Rule 78(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**

On December 30, 2013, Tietjen protectively filed an application for Supplemental Security Income ("SSI") and Social Security Disability ("SSDI") alleging disability commencing on September 1, 2009 due to Epstein-Barr Syndrome, slipped discs in her neck, chronic fatigue,

---

[1] Upon the Appeals Council's Order denying Tietjen's request for a review of the Administrative Law Judge's ("ALJ") decision, the ALJ's decision became the final decision of the Commissioner. (Administrative Record (Tr. 1-4).)

sciatica, and limited mobility. (Tr. 61-62.) The claim was denied on March 6, 2014, and upon reconsideration on May 5, 2014. (Tr. 79-80; 101-02.) On May 13, 2014, Tietjen filed a written request for a hearing. (Tr. 12-25.) Tietjen appeared and testified at the hearing held before ALJ Sharon Allard on April 19, 2016. (*Id.*)

On July 21, 2016, ALJ Allard issued an opinion determining: (1) Tietjen meets the insured status requirements of the Social Security Act through December 31, 2013; (2) Tietjen has not engaged in substantial gainful activity since October 11, 2013, the "amended onset date;" (3) Tietjen has one severe impairment: disorders of the spine; (4) Tietjen does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1; (5) Tietjen has the "residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)" except that Tietjen can "only occasionally climb ramps and stairs," can occasionally "kneel, stoop, and crouch," and will be 10% off task for the workday due to her impairment; (6) Tietjen is capable of performing past relevant work as a collections clerk as it "does not require the performance of work-related activities precluded by [Teitjen]'s residual functional capacity;" and (7) Tietjen has "not been under a disability, as defined in the Social Security Act, from October 11, 2013, through the date of this decision." (Tr. 17-21.)

On August 4, 2016, Tietjen requested review of the hearing decision by the Appeals Council of the Social Security Administration. (Tr. 184.) On August 15, 2017, the Appeals Council denied Tietjen's request for review. (Tr. 1-5.) Therefore, having exhausted her administrative remedies, Tietjen brought an appeal before this Court on October 9, 2017. (ECF No. 1.)

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

## III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if

"he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1

(the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d

5

Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146-47 n.5). An ALJ bears the burden of proof for the fifth step. *See id.* at 263.

## IV. DECISION

Tietjen argues the ALJ erred as a matter of law by failing to properly assess the effects of her obesity in combination with her other impairments, and by failing to properly assess the effects of Tietjen's need for a cane for balance. (ECF No. 15 at 5-11.) The Commissioner argues that substantial evidence supports the ALJ's determination that Tietjen possesses the RFC to perform a range of sedentary work, that Tietjen was not disabled as alleged, and that the ALJ properly evaluated Tietjen's obesity and cane use in accordance with the regulations set forth in

the applicable sections of the Social Security Rulings ("SSR"). (ECF No. 20 at 2-8.)

The Court focuses its attention on the RFC analysis contained in the five-step evaluation process, as Tietjen contends the ALJ "did not analyze the impact that obesity" and the "effect of the need for a cane" have "when assessing [her] functional capacity." (ECF No. 15 at 6, 10.) RFC refers to the vocational activities a claimant can still perform despite his or her limitations. 20 C.F.R. § 404.1545(a). The assessment must be based on all the relevant evidence, including medical records, medical source opinions, and the claimant's own subjective allegations and descriptions of limitations. *Id.* As factfinder, it is the ALJ's exclusive duty to make an RFC assessment. 20 C.F.R. § 404.1545(c).

First, Tietjen argues the ALJ erred as a matter of law by failing to properly assess the effects of her obesity in combination with her other impairments, as required by SSR 02-1p. (ECF No. 15 at 5-8.) The Commissioner counters the ALJ properly evaluated Tietjen's obesity in accordance with the applicable regulations. (ECF No. 20 at 6-7.) On January 23, 2014, Tietjen underwent a consultative examination with Dr. Paul DiLorenzo, an orthopedist, at which time she weighed 193 pounds. (Tr. 358.) Tietjen indicated that she had weighed as much as 350 pounds but had undergone a gastric bypass procedure in 2000 after which she lost approximately 200 pounds. (Tr. 64; 358.) At all times relevant to this appeal and since the amended onset date, Tietjen has a documented weight of: 170 and 193 pounds in October 2013; 190 pounds in December 2014; 214 pounds in October 2015; 225 and 227 pounds in February 2016; and 280 pounds in April 2016. (Tr. 400; 411; 415; 445; 452-58.)

In support of her argument that the ALJ failed to properly consider her obesity, Tietjen cites *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504 (3d Cir. 2009), for the proposition that "an ALJ must meaningfully consider the effect of a claimant's obesity,

7

individually and in combination with her impairments, on her workplace function at step three and every subsequent step."[2] The court in *Diaz* further held an ALJ must provide a discussion of the evidence and his or her reasoning for the conclusion "sufficient to enable meaningful judicial review." *Id.* (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)). However, in *Rutherford v. Banhart*, 399 F.3d 546, 533 (3d Cir. 2005), the Third Circuit held that a remand is unwarranted – even where an ALJ fails to mention obesity – if a claimant fails to specify how his or her weight impaired the ability to work, especially when the ALJ has relied on opinions from physicians who were aware of the claimant's weight.[3] Here, as in *Rutherford*,

---

[2] SSR 02-1 "instructs that 'obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirement of a listing. This is especially true of musculoskeletal . . . and cardiovascular impairments.'" *Diaz*, 577 F.3d at 503 (quoting 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002)). SSR 02-1 further states that the "functions likely to be limited depend on many factors, including where the excess weight is carried" and may pertain to limitations "in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling," as well as effecting the "ability to do postural functions, such as climbing, balance, stooping, and crouching." 67 Fed. Reg. 57859, 57859.

[3] Specifically, the court in *Rutherford* stated:

> We . . . conclude that a remand is not required here because it would not affect the outcome of the case. [The claimant] never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments. So even if we assume . . . that the administrative record's evidence of [the claimant's height and weight] . . . sufficed to alert the ALJ that obesity could be a factor, [the claimant] has not specified how that factor would affect the five-step analysis undertaken by the ALJ . . . That generalized response is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments. Because her doctors must also be viewed as aware of [the claimant]'s obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition.

*Rutherford*, 399 F.3d at 553.

8

Tietjen failed to specify how her obesity met the disability criteria contained in the SSR and how her obesity precluded her from performing sedentary work with postural and environmental limitations, as the ALJ concluded she could. (ECF No. 15 at 5-8.) Moreover, Tietjen failed to list obesity as an illness, injury, or condition constituting a disability in her application for SSI and SSDI benefits. (Tr. 61-62.)[4]

Also as in *Rutherford*, the ALJ relied on opinions from physicians who certainly knew of Tietjen's obesity, and subsequently determined that her obesity did not constitute a severe impairment. (Tr. 17-21.) This includes the opinions of Dr. DiLorenzo and Dr. Michael Joffe, Tietjen's chiropractor. (*Id.*)[5] Finally, while Tietjen references weighing as much as 350 pounds (ECF No. 15 at 5), this weight was never documented during the relevant period from October 11, 2013 through July 21, 2016. (Tr. 400; 411; 415; 445; 452-58.)[6] Accordingly, the ALJ did not err as a matter of law in declining to cite Tietjen's alleged obesity in denying her application for SSI and SSDI benefits.

Second, Tietjen argues the ALJ erred as a matter of law by failing to properly assess the effects of her need for a cane for balance, as required by SSR 96-9p. (ECF No. 15 at 8-11.) Specifically, Tietjen contends that while the ALJ made "two isolated mentions" of her need to use a cane, the ALJ "failed to discuss it in any meaningful way, or include the need for a cane in Plaintiff's RFC." (ECF No. 20 at 9-10.) The Commissioner counters that the ALJ properly

---

[4] While Tietjen did reference her 2000 gastric bypass surgery in her application for SSI and SSDI benefits, she did not include obesity under her allegations of impairments or a condition contributing thereto. (Tr. 61-62.) Moreover, Tietjen's gastric bypass surgery took place in 2000, thirteen years before the amended onset date of this application, October 11, 2013. (Tr. 19.)

[5] Ultimately, however, the ALJ determined Dr. Joffe "is a chiropractor and is not an acceptable medical source" for the purposes of an SSDI benefits adjudication and review.

[6] During this period, Tietjen's weight was listed as varying between 170 and 280 pounds. (Tr. 400; 411; 415; 445; 452-58.)

9

assessed Tietjen's cane usage in accordance with the requirements of SSR 96-9p as, *inter alia*, Tietjen did not provide medical documentation establishing the need for a hand-held assistive device to aid in walking nor the circumstances under which Tietjen requires such a device. (ECF No. 20 at 7-8.)

SSR 96-9p states, in pertinent part:

> Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e. whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have to ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9p (S.S.A.), 1996 WL 374185 (July 2, 1996) at *7.

Here, the ALJ briefly discussed Tietjen's cane usage, stating that she "reported using a cane to relieve the pain in her left leg" and used "a cane for ambulation due to her unsteady gait," while also noting the "range of motion in [Tietjen's] cervical spine was normal." (Tr. 19.) Tietjen argues she "alleged the need for a hand-held assistive device for balancing and walking" and that the ALJ "did not consider [or cite] any evidence contrary to [her] position" in rendering the decision. (ECF No. 15 at 10.) Tietjen contends this constitutes a clear error of law thereby necessitating a remand. (ECF No. 15 at 11.)

This Court is satisfied that the ALJ properly considered Tietjen's cane usage. Contrary to Tietjen's argument, the ALJ addressed her need for a cane and discussed her testimony of cane usage as well as the report of Dr. DiLorenzo that Tietjen used a cane for ambulation due to her "unsteady gait." (Tr. 17-20; Tr. 242-43; Tr. 257.) Tietjen is incorrect in asserting the ALJ did not consider any evidence contrary to her position in rendering the decision. The ALJ specifically noted Dr. DiLorenzo's conclusion that Tietjen's cervical spine was normal and that "if [Tietjen's] vitamin deficiency was corrected, her balance difficulty and gait issue would resolve." (Tr. 19.) As such, the ALJ relied on substantial contrary evidence in the form of medical opinions in determining that Tietjen's cane usage, coupled with her established injuries, did not constitute an impairment sufficient for the receipt of benefits.

Additionally, Tietjen failed to provide any medical documentation demonstrating that her cane usage is "medically required" pursuant to SSR 96-9p. In order for a hand-held assistive device to be deemed "medically required," there must be "medical documentation establishing the need for a hand-held device" as well as "[documentation] *describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).*" SSR 96-9p, 1996 WL 374185, at *7

11

(emphases added). Here, there is no such documentation in the treatment record. On the contrary, Tietjen merely points to an explanation from Dr. DiLorenzo in which he opined Tietjen "ambulat[es] with a cane," "walks with a wide-based antalgic gait [when not using a cane]," and "cannot stand with her feet close together without having unsteadiness and holding onto the wall [] reminiscent of an ataxia." (Tr. 359.) This analysis does not include a description of the circumstances under which Tietjen requires the use of a cane.

Moreover, even if the medical documentation concluded that Tietjen required constant use of a cane, it would not call into question the conclusions of her work capabilities described in the RFC. As SSR 96-9p explicitly notes, if a cane "is needed only for prolonged ambulation, walking on uneven terrain, or ascending and descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." SSR 96-9p, 1996 WL 374185, at *7. As the ALJ noted, this limitation does not preclude from engaging in her past relevant work as a collections clerk and cashier. (Tr. 20.) As such, Tietjen has failed to point to any substantial evidence in the administrative record demonstrating she had any physical functional limitations beyond those in the RFC. Accordingly, the ALJ's decision and Commissioner's denial of review of that decision are **AFFIRMED**.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

**Date:** March 18, 2018    */s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**